UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| DENISE EVANS NELSON, )<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>)<br>UNUM GROUP CORPORATION, )<br>*Defendant.* )<br>) | Case No. 1:13-cv-58<br><br>Mattice/Carter |

REPORT and RECOMMENDATION

I. Introduction

This is an action brought by Plaintiff Denise Evans Nelson to recover long term disability benefits due to an inability to perform her occupation pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.* under a disability policy she obtained through her employment. Plaintiff's Motion for Judgment As a Matter of Law (Doc. 16) is pending before the undersigned Magistrate Judge, having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Under the standard of review applicable to this case, the undersigned concludes Unum Group Corporation (Unum) did not abuse its discretion in denying plaintiff benefits; therefore, it is RECOMMENDED Plaintiff's Motion for Judgment As a Matter of Law be DENIED, Plaintiff's action be DISMISSED, and judgment ENTERED in favor of defendant Unum.

II. Facts

**A. Plaintiff Files Her Disability Claim**

Plaintiff is a 50-year-old former sales representative for the News Publishing Company in

1

Rome, Georgia, where she was employed from January 1999 to December 2011. Plaintiff discontinued working on October 24, 2011 (Administrative Record, Page ID # 458). On or about January 25, 2012, Plaintiff filed a claim with Unum for short-term disability ("STD"). After determining that Plaintiff had previously terminated her STD coverage, her claim was converted to an LTD claim, and the STD claim was closed. On its own accord, Unum also initiated a life insurance premium wavier ("LWOP") claim, but discontinued it on June 22, 2012, after denying Plaintiff's LTD claim (Administrative Record, Page ID # 675). Plaintiff filed this action on February 26, 2013, seeking judicial review of Unum's denial of her claim for long term disability benefits based on an asserted inability to work in her regular occupation as a sales representative.

### B. The Policy

Under the policy at issue (the Policy), an insured is considered disabled when Unum determines that:

- You are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
  You have 20% or more loss of your indexed monthly earnings due to the same sickness or injury.

(Administrative Record, Page ID # 730).[1]

### C. Submitted Medical Records

There were records of four visits to Plaintiff's family physician, Dr. Suzanne Storey, and records of one epidural injection and an MRI taken of Plaintiff's back.

---

[1] The Policy also provides that "after 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which are reasonably fitted by education, training, or experience." (Administrative Record, Page ID # 730)

2

On June 20, 2011, Plaintiff saw Dr. Storey, who noted chronic back pain. Dr. Storey wrote "methadone still working well for pack pain" (Administrative Record, Page ID # 309). Plaintiff reported no sedation, fatigue, or somnolence. Plaintiff's prescription for methadone, 10 mg three times a day, was refilled. *Id.*

Plaintiff saw Dr. Storey again on October 24, 2011, which was also, incidentally, the day she stopped working (Administrative Record, Page ID # 458). She reported worsening pain in legs and hips with fatigue and poor sleep. She reported she could not sit or ride more than 30 minutes at a time. Plaintiff denied dizziness but reported she could not take her medications because they caused sedation, affecting her concentration and focus. Dr. Storey reported decreased range of motion, lumbar spine and paraspinal muscle tenderness, and an inability to elicit reflexes bilaterally. Dr. Storey continued Plaintiff's prescriptions of Loratab, Xanax, and Meloxicam (Administrative Record, Page ID # 307).

On October 27, 2011, Plaintiff underwent an MRI of the spine. The interpreting physician, Dr. Garth McPherson, opined the MRI showed mild lumbar spondylosis and was negative for disk protrusion or nerve root compression. He further stated, "[t]he MRI of the lumbar spine is otherwise normal." (Administrative Record, Page ID # 312). Dr. Storey hand wrote on the MRI report "arthritis at spine & bulging disc with pinched nerve." Plaintiff received a lumbar epidural steroid and Marcane injection for pain on November 22, 2011 (Administrative Record, Page ID # 311).

Plaintiff saw Dr. Storey again on November 14, 2011. In the portion of her notes designated as "Subjective," Dr. Storey wrote:

> Follow-up after being out of work for 3 weeks. Her pain has been better, but that is simply because she has been taking her medications as prescribed. However, by taking them as prescribed, she has had to have more time resting due to sedation and dizziness particularly when she gets anxious and has to take a

> Xanax. She tried to do some housework, but even just light housework such as dusting and minor cleaning she has to stop and rest between episodes. No new symptoms.

(Administrative Record, Page ID # 306). Dr. Storey noted the epidural injection provided no real improvement with Plaintiff's symptoms. She noted chronic lumbar pain and spondylosis with significant pain greatly limiting activities. She further stated Plaintiff's medication impacts her ability to maintain "focus and function" during the day and she may have to pursue disability. Dr. Storey gave Plaintiff a refill of her methadone prescription for 10 mg #90 with no refill (Administrative Record, Page ID # 306).

Plaintiff's visit on December 5, 2011, is the last visit to Dr. Storey in the administrative record. Plaintiff reported sleeping difficulty due to pain and stated she could not sit more than 30 minutes without a change of position. She was walking with a cane. Dr. Storey noted the failed epidural injection and indicated Plaintiff was experiencing increased pain "despite being out of work and resting." She recommended Plaintiff "pursue disability" and prescribed an additional 10 mg dose of methadone to be taken at bedtime (Administrative Record, Page ID # 305).

**D. Unum's Review of Plaintiff's Claim**

*1. Plaintiff's Statement to Unum.*

On February 14, 2012, Unum's Disability Benefits Specialist Genna Peeler-Bagley conducted a telephone interview of Plaintiff, who confirmed that she was treating only with Dr. Storey. Plaintiff stated, among other things, that she stopped working because she was under a lot of pressure and stress, that she could not take her medications while working because they made her sleepy, and that she was having a lot of pain (Administrative Record, Page ID # 270). She cited a motor vehicle accident as the root cause of her medical issues. The accident occurred in 1993, and, according to Plaintiff, she lost her knee cap, shattered her hip, and almost lost her

4

leg (Administrative Record, Page ID # 270). During the call, Plaintiff reported that her medications included Hydrocodone (painreliever), Xanax (anxiety), Methadone (narcotic pain reliever), Atenolol (high blood pressure), Crestor (high cholesterol), Omeprazole (heartburn, ulcers, GERD), Ropinirole (restless leg syndrome), Meloxicam (arthritis pain reliever), Vitamin D, and Fish Oil. (*Id.*) Plaintiff also discussed her activities and hobbies, stating that she "does what she can" around the house. Plaintiff specifically mentioned doing laundry and washing dishes. She also stated that she spent most days sitting or lying in the bed. Plaintiff indicated that because she takes her medications as prescribed now, she has to stay home because they make her feel drunk (Administrative Record, Page ID # 271). Plaintiff advised that she could no longer work because the medication made her drowsy, and she was not supposed to drive while taking the medication (Administrative Record, Page ID # 271).

### 2. Attending Physician Statement by Dr. Suzanne Storey

Plaintiff submitted an attending physician statement ("APS") from her treating physician, family practitioner Dr. Suzanne Storey (Administrative Record, Page ID # 302). According to the APS, Dr. Storey diagnosed Plaintiff with chronic lumbar pain with spondylosis and listed degeneration and restless leg syndrome as Plaintiff's secondary diagnoses. Plaintiff's symptoms included chronic daily pain, fatigue, decreased stamina, and leg weakness. According to Dr. Storey, Plaintiff's physical findings included a positive MRI for spondylosis, marked decreased ROM (range of motion), flat affect, and walking with a cane. Dr. Storey noted Plaintiff received an epidural injection which did little to relieve her pain (Administrative Record, Page ID # 302). Dr. Storey listed Plaintiff's restrictions and limitations as no lifting greater than 5-10 pounds, in addition to no bending, twisting, stooping, or operating heavy machinery when taking medication. Dr. Storey opined plaintiff could not sit, stand, or walk thirty minutes at a time

5

without stopping to rest or lie down, even at home, due to pain. Dr. Storey also noted she did not expect Plaintiff to improve and cited her failed treatment and the fact that Plaintiff was not a surgical candidate as reasons why Plaintiff was not likely to improve (Administrative Record, Page ID # 303).

### *3. Dr. Freeman Broadwell's Review*

Unum's on-site physician, Dr. Freeman Broadwell, III, M.D., Board Certified in Physical Medicine and Rehabilitation, spoke to Dr. Storey by telephone on March 19, 2012. Following their discussion, Dr. Broadwell prepared and sent a letter dated March 20, 2012, to Dr. Storey that summarized their call, stating in pertinent part:

> • We discussed Ms. Nelson's low back pain, physical exam and MRI findings, narcotic management, and medically appropriate work restrictions.
>
> • You stated
> ° Ms. Nelson has been on Methadone since 2009, and since 2009 she has been on 10 mg tid [three times per day] plus Vicodin prn for her back pain. Her dose increased to QID [four times per day] just within the last couple of months.
>
> ° With regard to specialty care, she has seen only a pain management proceduralist for epidural steroid injections in 2007 and again in late 2011. As her exams revealed a normal neurologic exam and her MRI no surgical indications, she has not been referred to a spine surgeon.
>
> ° In view of her normal neurologic exam and unremarkable MRI, her work restrictions are based upon her report of pain and self-assessed work capacity.

(Administrative Record, Page ID # 431).

Dr. Broadwell asked Dr. Storey to reply to the letter if she disagreed with the statements or if she had any additions or corrections to the summary he provided. By facsimile dated March 28, 2012, Dr. Storey returned the letter with a handwritten comment stating that

6

Plaintiff "has shown evidence for pain during exams, just not an abnormal reflex or muscle weakness." She also indicated that Plaintiff did not show evidence of malingering at her office visits (Administrative Record, Page ID # 431-32). Dr. Storey did not otherwise indicate any disagreement with the confirmatory statements in Dr. Broadwell's letter.

*4. Dr. Broadwell's Review of Plaintiff's Claim*

After reviewing Plaintiff's medical file and speaking with Dr. Storey, Dr. Broadwell opined that Dr. Storey's restrictions were inconsistent with the medical information in her records. Dr. Broadwell cited Plaintiff's limited physical findings supporting her disability, noting that Plaintiff's records referenced four office visits, with only one office visit noting a physical examination. Dr. Broadwell observed that the findings during her physical examination were not "sufficiently specific to establish the diagnosis of lumbar radiculopathy." (Administrative Record, Page ID # 455). Dr. Broadwell also noted that Plaintiff's lumbar MRI (Administrative Record, Page ID # 312) was unremarkable and that Dr. Storey acknowledged that there were no findings to warrant surgical referral. With regard to Plaintiff's pain management, Dr. Broadwell determined that Plaintiff's treatment has not been consistent with her claimed medical symptoms. For example, although Plaintiff reported to Dr. Storey on October 24, 2011 that her medications caused sedation, Dr. Storey's prior medical notes of June 20, 2011 indicate her medications for back pain were well tolerated with no sedation or daytime somnolence. (Administrative Record, Page ID #'s 309 and 455). Dr. Broadwell further opined:

> [T]he insured has performed her current occupation for more than 10 years, working on both Xanax for anxiety and Methadone for chronic low back pain. There is no significant change in her health status in general, or in her back condition in particular, that supports a change in her work status.

(Administrative Record, Page ID # 455). Dr. Broadwell opined that Dr. Storey's asserted work restrictions exceed what is documented in Plaintiff's medical records and, further, that Dr. Storey

7

placed a disproportionate amount of weight on Plaintiff's reported symptoms and self-assessed work capabilities (*Id.*).

### 5. Designated Medical Officer Review of Plaintiff's Claim

Unum also referred the Plaintiff's claim for review by Dr. Suzanne Benson, who is board-certified in physical medicine, rehabilitation and electro-diagnostic medicine with a sub-specialty certification in pain medicine (Administrative Record, Page ID # 458-61). Dr. Benson noted that Dr. Storey attributed Plaintiff's work stoppage to lumbar spondylosis and right lower limb radiculopathy. Dr. Benson stated the medical records supported chronic low back pain and right lower limb pain with chronic treatment with opiods, but she also observed that the spondylosis shown on the MRI was mild and did not support a diagnosis of radiculopathy. Accordingly, Dr. Benson did not find reasonable support for a spine condition requiring the permanent restrictions and limitations recommended by Dr. Storey. Dr. Benson agreed with Dr. Broadwell and concluded there was no reasonable support for Dr. Storey's opinions (Administrative Record, Page ID # 459-61). Dr. Benson also reviewed Plaintiff's extensive pharmacy records to assess Plaintiff's claim that her medications precluded her from working. (Administrative Record, Page ID # 460). Dr. Benson observed that Plaintiff's pharmacy records obtained after December 5, 2011 did not reflect a significant change from previous records between January 2, 2007 and September 21, 2010. Dr. Benson pointed out that while Plaintiff claimed she did not take her medications at work, she routinely filled her monthly prescriptions for Xanax (Alprazolam), Hydrocodone, and Methadone. Notably, the amounts of the prescriptions (Xanax-2x per day, Hydrocodone-4x per day, Methadone-3x per day) revealed daily use and were consistently refilled each month. Based on the half-life of the medications, Dr. Benson opined that it was reasonable to conclude that such medicines were active in

Plaintiff's system while she worked. Dr. Benson further concluded that without a significant change in Plaintiff's medication dosage until six weeks after she ceased working, there was not a reasonable basis upon which to conclude that Plaintiff's medications prevented her from working. Additionally, Dr. Benson opined that Plaintiff's physical examinations did not provide evidence of any deficits in alertness or cognitive ability, and the evaluation and treatment failed to support her treating physician's concerns for impaired alertness or cognition (Administrative Record, Page ID # 460).

6. *Vocational Review of Plaintiff's Claim*

Unum consultant Kelli Marsiano, M. Ed. CRC, Senior Vocational Rehab Consultant ("VRC") conducted an occupational analysis for Plaintiff's claim (Administrative Record, Page ID # 475-78). Ms. Marsiano determined that Plaintiff's job fell within the "light duty" category of physical demands and was consistent with two occupational titles, Advertising Sales Representative and Advertising Space Clerk. She determined that the demands of Plaintiff's occupation did not exceed the supported restrictions and limitations as determined by Dr. Broadwell and Dr. Benson. Ms. Marsiano concluded that Plaintiff had the ability to work fulltime, to lift up to 20 pounds occasionally and to stand, sit and walk frequently, all of which would not exceed the physical demands of her regular occupation (Administrative Record, Page ID # 475-8).

7. *Unum's Denial of Plaintiff's Claim and Plaintiff's Appeal*

Based on its doctor's reviews of Plaintiff's claim, Unum denied Plaintiff's claim for long term disability benefits finding she could perform her current job (Administrative Record, Page ID # 467-72).

9

Plaintiff retained her present counsel and submitted an appeal on October 24, 2012 (Administrative Record, Page ID # 505). The appeal included a letter authored by Plaintiff's attorney and signed by Dr. Storey, stating that Unum's denial did not take into consideration the "medical realities" of Plaintiff's claim. The letter asserted that Plaintiff's medication was taken infrequently during the time she worked, so that Plaintiff could continue driving for her job. The letter further stated that Plaintiff relied on her medication more as her pain and condition progressed (Administrative Record, Page ID # 507).

*8. Dr. Norris' Review of Plaintiff's Appeal*

Unum referred Plaintiff's appeal for review by Dr. Scott Norris, who is an on-site physician for Unum, and who is board-certified in family, occupational, and aerospace medicine. Dr. Norris reviewed Plaintiff's claim and submissions on appeal and addressed whether there was evidence to support Plaintiff's symptoms and limitations to prevent her from performing her job, which included driving (Administrative Record, Page ID # 535). Dr. Norris concluded that Plaintiff's symptoms were consistent with an acute lumbar strain with underlying chronic lumbar pain (Administrative Record, Page ID # 544-5). Dr. Norris opined that given this diagnosis, a four to six-week recovery period was warranted with certain restrictions and limitations. Those restrictions and limitations included "no repetitive bending/stooping, frequent sitting with position shift as needed and 'microbreaks' (i.e. stretch break) every 30 minutes as needed, and lifting limited up to 20 pounds occasionally are supported through December 5, 2011." (Administrative Record, Page ID # 545). Dr. Norris stated there was no diagnostic imaging or testing evidence to support a finding of neurologic compromise. Accordingly, Dr. Norris determined that the medical evidence did not support the restrictions and limitations precluding Plaintiff from performing light occupational activities (*Id.*).

10

Dr. Norris also assessed whether Plaintiff's use of pain medication impaired her ability to do her job. Dr. Norris opined that there were no physical findings to support Plaintiff's reported sedation and dizziness when taking her medication "as prescribed." The medical records indicated that Plaintiff's medications remained at the same dosage, and the prescriptions were filled regularly for several years, until an additional 10 mg of Methadone (to be taken at bedtime) was added to her regiment in December 2011. Dr. Norris opined that despite Plaintiff's complaints of sedation and dizziness due to medication, Plaintiff's records did not contain objective physical findings consistent with such as of her date of disability (10/24/2011) because she had successfully worked for years while regularly filling prescriptions for her medications and there was no change in the dosage of her medication until December 5, 2011, when only an additional 10 mg of Methadone was added at bedtime (Administrative Record, Page ID # 545-6).

Dr. Norris also evaluated Plaintiff's secondary diagnosis of depression. He opined that nothing in Plaintiff's medical records indicated that she was prescribed an antidepressant or seen by a behavioral health provider. Accordingly, Dr. Norris concluded that there was no medical evidence to support a disabling behavioral health condition (Administrative Record, Page ID # 546).

Dr. Norris concluded, "the medical records in the file do not support Dr. Storey's [restrictions or limitations], which are overly restrictive given the paucity of ongoing physical exam findings, relatively benign MRI findings, and the lack of progressive treatment/diagnostic intensity." (Administrative Record, Page ID # 546).

*9. Unum Upholds Denial of Plaintiff's Claim for LTD Benefits*

On January 28, 2013, Unum sent Plaintiff a letter responding to its appeal and upholding the denial. The appeal denial letter reiterated the medical information provided in the original

11

denial letter. The letter more specifically set forth information regarding Plaintiff's low back pain, depression, and medication side effects. Unum explained that the medical records did not support the restrictions and limitations imposed by Plaintiff's treating physician (Administrative Record, Page ID # 549-58). This action followed.

### III. Analysis

*A. Standard of Review*

The Sixth Circuit has ruled that summary judgment procedures are inapposite to ERISA actions to recover benefits and, thus, should not be utilized in their disposition. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). Instead, the *Wilkins* court held the court should conduct a review based solely on the administrative record that had been before the plan administrator/decision maker. In doing so, the court should consider the parties' arguments concerning the proper analysis of the evidence contained in the administrative record. With certain narrowly drawn exceptions, which do not apply to the instant case, review is restricted to the evidence presented to the administrator. *Wilkins*, 150 F.3d at 619; *Marchetti v. Sun Life Assur. Co. of Canada*, 30 F.Supp.2d 1001, 1004 (M.D. Tenn. 1998).

The parties disagree as to the proper standard of review in the instant case. Plaintiff asserts the standard of review is *de novo* while the Defendant asserts it is an arbitrary and capricious standard. When reviewing pursuant to ERISA a plan administrator's decision to grant or deny benefits, a court applies a *de novo* review unless the plan gives the plan administrator discretion; in that instance, the court reviews the decision to determine if it is arbitrary and capricious. *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998).

The Policy in this case includes the following paragraph:

12

**Discretionary Acts**

*The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan.* Unum and Unum Group may act directly or through their employees and agents or further delegate their authority through contracts, letters or other documentation or procedures to other affiliates, person or entities. Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

(Administrative Record, Page ID # 756) (emphasis added). The Policy identifies Plaintiff's employer, News Publishing Company, as the plan administrator and the "named fiduciary of the Plan, with authority to delegate its duties." (Administrative Record, Page ID # 750).

Citing *Shelby County Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355 (6th Cir. 2009) and *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590 (6th Cir. 2001), Plaintiff argues that Plaintiff's employer, News Publishing Company, not Unum, is the plan administrator and the plan fiduciary under the Policy, and, since Unum, not News Publishing Company, reviewed plaintiff's claim and made the decision to deny it, then "there has been no exercise of discretionary authority and [therefore] deferential review is not warranted or justified." Unum argues that neither *Shelby County Health Care* nor *Sanford* apply to the instant case because, in those cases, the plan procedures were not followed, but in this case the Policy specifically permitted the plan administrator to delegate its decision making authority to Unum. Unum is correct.

In *Sanford*, the plan at issue specifically designated a Board of Administration with discretionary authority to decide benefits eligibility, but contrary to the plan, the employer "at a meeting prompted by a union grievance held under the auspices of the CBA [collective bargaining agreement]" made the decision to deny benefits. The *Sanford* court held "[t]his

13

contravened the procedures set forth in § 9 of the plan" and concluded the district court did not commit clear error where, "[h]aving ascertained that the decision to revoke Sanford's benefits was made by an unauthorized body and not by the Board, the district court concluded it was appropriate to review … denial of benefits de novo."

The salient facts in *Shelby County* as they impact this case are substantially similar to those in *Sanford*. In *Shelby County*, the plan at issue explicitly gave one entity the authority to decide benefit decisions, but another entity actually made the benefits decision. The *Shelby County* court found the district court properly applied a *de novo* standard to its review even though the plan called for discretionary authority. *Shelby County Health Care Corp.*, 581 F.3d at 365-68. The *Shelby County* court explained, "even when the plan documents confer discretionary authority on the plan administrator, when the benefits decision 'is made by a body other than the one authorized by the procedures set forth in a benefits plan,' federal courts review the benefits decision *de novo*." *Id.* at 365.

The primary focus in *Sanford* and *Shelby County* is on whether the proper *procedures* were followed and the body authorized to make the benefits decision did so. In the instant case, the Policy specifically delegates to Unum discretionary authority to decide the issue of benefits. Unum by the very terms of the Policy was the authorized body to make the benefits decision. Thus, I conclude the proper standard of review is arbitrary and capricious. *See also Morrison v. Regions Financial Corp.*, 941 F.Supp.2d 892, 902-03 (W.D. Tenn. 2013) (holding application of arbitrary and capricious standard was proper in denial of benefits by third party entity where the ERISA plan called for discretionary review and designated the third party as the entity to make a benefits determination); *Solomon v. Medical Mut. Of Ohio*, 41 Fed. Appx. 788, 792 (6th Cir. 2011) (In *Sanford*, "the court [] settled on de novo review as the appropriate standard not simply

14

because an outside entity acted as the final decisionmaker, but because the defendant-administrators *violated plan procedures* in making the benefits determination.") (emphasis original).

Under the arbitrary and capricious standard, the decision must be upheld as long as the plan offers a reasoned explanation based on the evidence. *Elliot v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006); *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003); *University Hosps. of Cleveland v. Emerson Electric Co.,* 202 F.3d 839, 844 (6th Cir. 2000) (when it is possible for the plan to offer a reasoned explanation based on the evidence, that decision cannot be considered arbitrary and capricious).

While the arbitrary and capricious standard is deferential, "it is not, however, without some teeth." *McDonald,* 347 F.3d at 172. "Deferential review is not no review," and "deference need not be abject." *Id.* The court is obligated to make a review of both the quality and quantity of the medical evidence and the opinions on both sides of the issues. *Id.* Courts should not be mere rubber stamps who uphold an administrator's decision whenever the plan was able to find a single piece of evidence—no matter how obscure or untrustworthy—to support a denial of a claim for ERISA benefits. *Id.* Furthermore, the court should not uphold a termination when there is an absence of reasoning in the record to support it. *Id.* "We give less deference if a plan administrator fails to gather or examine relevant evidence." *Caldwell v. Life Ins. Co. of North America*, 287 F.3d 1276, 1282 (10th Cir. 2002).

Moreover, any application of the arbitrary and capricious standard must take into account conflicts of interest held by the decision-maker. A conflict of interest exists where a defendant decision maker also funds the plan from which benefits will be paid. *See Metropolitan Life Ins. Co. v. Glenn*, 549 U.S. 1337 (2008); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115

15

(1989). Where the same entity "both funds and administers the plan . . . it incurs a direct expense as a result of the allowance of benefits, and it benefits directly from the denial or discontinuation of benefits." *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998). Nevertheless, such a conflict of interest standing alone is not a basis for reversal; it is, however, a factor to consider when reviewing a denial of benefits. *Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 704 (6th Cir. 2014), citing *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 664 (6th Cir. 2013).

*B. Discussion*

Plaintiff contends the evidence supports her assertions that she can no longer perform the essential job function of driving because the medications she must take to alleviate her pain due to her back problems cause her to be drowsy. Plaintiff asserts that the only way she was able to work was to abstain from taking the full complement of her pain medications because, if she did take them as prescribed, she was too impaired to drive. According to Plaintiff, her back pain worsened, she was forced to take all her pain medications, and she could no longer drive. Her physician, Dr. Suzanne Storey, has found the Plaintiff's complaints of pain and her reports of drowsiness to be credible.

Unum had three physicians review Plaintiff's medical records, and they all found plaintiff's claim of disability unsubstantiated on two bases: (1) the objective medical findings did not support the severity of physical injury and, concomitantly, the level of pain alleged and (2) records indicated Plaintiff regularly filled the full complement of her pain medications for a number of years when she was still working, and this fact belies her contention that she was unable to take all the medications as prescribed for pain when she worked.

16

The medical records in this case are sparse. Plaintiff has presented only four visits to Dr. Storey, an epidural injection for pain, and an MRI of the lumbar spine. The doctor who reviewed the MRI, Dr. Garth McPherson of Diagnostic Radiology Consultants, noted mild disc bulging at S1-S2, L2-L3, and L4-L5, but he saw no disc protrusion, no nerve root compression, and no central canal stenosis. He concluded Plaintiff had only mild spondylosis. It is uncontested that this MRI indicated Plaintiff was not a surgical candidate. Plaintiff underwent an epidural injection for pain which she did not find helpful, and she elected not to try another one to see if results might be better a second time. She did not go to see a spine specialist for further treatment of her back issues. It was not reasonable for Unum to conclude that the objective medical evidence does not support plaintiff's complaints regarding the severity of her pain.

As to the pain prescriptions, Plaintiff submitted pharmacy records covering the period of January 2, 2007 to September 21, 2010, a time period during which plaintiff was still working. The records showed Plaintiff filled the full complement of pain prescriptions regularly, thereby indicating she was taking them as prescribed and was able to work while taking them. The record does not indicate an increase in her medications until December 5, 2011, when Dr. Storey added an additional dose of 10 mg of methadone to be taken at bedtime, not during working hours. Based on these records, it was not unreasonable for Unum to conclude Plaintiff could take her pain medications as prescribed and work.

Had the standard of review in the instant case been *de novo*, the undersigned may have reached a different result, but I cannot say that a reasonable basis is lacking for Unum's denial of the Plaintiff's benefits. Given the deferential standard of review, the paucity and weakness of Plaintiff's objective medical evidence, and the pharmacy records suggesting Plaintiff could work

17

while taking her medications as prescribed, the undersigned concludes Unum's denial of long term disability benefits was not arbitrary and capricious.

## IV. Conclusion

For the reasons stated herein, it is RECOMMENDED Plaintiff's Motion for Judgment As a Matter of Law (Doc. 16) be DENIED and judgment entered in favor of Defendant Unum.[2]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).